[Civ. No. 10133. First Appellate .District, Division Two.—June 18, 1936.]

PACIFIC MANUFACTURING COMPANY (a Corporation), Petitioner, v. LEONARD S. LEAVY, as Controller, etc., Respondent.

DeLancey C. Smith and Murray Draper for Petitioner.

John J. O'Toole, City Attorney, Henry Heidelberg, Deputy City Attorney, and John J. Dailey for Respondent.

STURTEVANT, J.—This is an application for a writ of mandate against the respondent Leonard S. Leavy, as Controller of the City and County of San Francisco, to compel him to draw his warrant in favor of the petitioner in the sum of $3,375. The action presents no question of fact but solely a question of law. On the 25th day of March, 1935, MacDonald & Kahn Co., Ltd., was awarded a contract to construct the Marina Junior High School. The contract covered every item, including the furnishing of mill work and installing the same. It also provided that on the 10th day of each month during the performance of the contract a sum equal to 75 per cent of the contract price for materials and work done during the preceding calendar month should be paid in accordance with an estimate to be made by the architect. On May 2, 1935, MacDonald & Kahn Co., Ltd., entered into a contract with the petitioner under which the petitioner was required to furnish the mill work so required by the general contract to be furnished and installed by MacDonald & Kahn Co., Ltd. Petitioner's contract contained nothing to the contrary and the monthly claims for compensation were presented by MacDonald & Kahn Co., Ltd., and it disbursed to its subcontractors their proportion of each monthly claim. The claim so presented for the month of December included among other items $3,375 for

mill work furnished by petitioner to MacDonald & Kahn
Co., Ltd., and by the latter installed in the building. The
fiscal officers of the city and county of San Francisco al-
lowed and ordered paid the entire claim presented by Mac-
Donald & Kahn Co., Ltd., except the said sum of $3,375, the
amount representing the claim of this petitioner. It is ad-
mitted that the funds were available and in the treasury,
but nevertheless the respondent refused to draw his war-
rant. The petitioner alleges and the respondent admits that
the latter's refusal was based on the contention of the latter
that this petitioner did not comply with the provisions of
section 98 of the Freeholders' Charter as the same was worded
on May 17, 1935, and that petitioner did not comply with
Ordinance No. 9.0923.

The contract awarded to MacDonald & Kahn Co., Ltd., by
reference adopted the plans and specifications, and in par-
ticular specifications as to the mill work to be installed in
the building. However, no claim is made that any of the
mill work furnished by the petitioner was not in compliance
with the plans and specifications. Except to deliver the
mill work prepared by it, the petitioner, under the terms of
its contract, was not called upon to do or perform any work
whatever at the site of the Marina Junior High School
building.

The petitioner claims that it has done and performed
all things by it to be done and performed. The respondent
asserts that such is not the fact because the petitioner did
not comply with the provisions of section 98 of the charter,
as that section was worded on May 17, 1935, and that peti-
tioner has not complied with the provisions of said Ordi-
nance No. 9.0923. To those statements the petitioner re-
plies that its contract did not come within the provisions
of section 98 nor of said ordinance. That reply we think
is well founded. As the ordinance mentioned was enacted
to carry into effect the provisions of section 98 of the char-
ter, and if the petitioner's contract did not come within the
provisions of that section, it will not be necessary to further
discuss the provisions of the ordinance.

Section 98 of the charter in part provides as follows:
"*Every contract for any public work* or improvement, *ex-
clusive of purchases,* to be performed at the expense of the

city and county, or paid out of moneys deposited in the treasury, whether such work is to be done directly under contract awarded, or indirectly by or under sub-contract, sub-partnership, day labor, station work, piece work, or any other arrangement whatsoever, must provide: . . . '' etc. As to whether the petitioner's contract was ''for public work'' or was one of ''purchase'', is not an open question in this state. Facts closely akin were passed on in the case of *Neal Publishing Co.* v. *Rolph,* 169 Cal. 190 ]146 Pac. 659, 660]. In deciding the case the court quoted with approval as follows from the opinion of the late Judge J. M. Seawell, who was the trial judge:

''In my opinion this contract does not provide for the *doing of work for the city and county* within the meaning of this provision, but simply for the furnishing of certain finished articles of merchandise, which the contractor may have printed anywhere that he chooses. . . . These articles are the property of the contractor until delivered to the city, and do not seem to come within this provision. No *work* is done for the city. It is rather like the case of furnishing structural steel for the erection of a building. The contractor simply furnishes a certain chattel for the city in a completed state, and it is not work done for the city. In this instance, it is the making and delivering to the city of this material. It is merely a chattel or merchandise delivered to the city.'' It then quoted from *United States* v. *Ollinger,* 55 Fed. 959, 960, as follows: ''It is clear to me that the building of the barges was in no sense a part of the public works; no more so than the mining of coal contracted to be furnished to the navy and marine service of the United States according to specifications as to quantity and quality, or the furnishing under contract with the government of the United States of lumber and brick to be used in building quarters at Mt. Vernon barracks for officers or soldiers or any other public use, according to specifications as to kind, quantity, and quality. It would hardly be contended that the mining of such coal, the sawing of the lumber, or making the bricks, would be public works in contemplation of the act of Congress, or that the laborers engaged in the work of mining and in making the lumber and bricks were the laborers whose services and employment Congress has undertaken to regulate and limit. I fail to see

any difference in principle in the cases mentioned and that under consideration." Then, concluding the point, Mr. Chief Justice Angellotti, writing the opinion for the court, stated: "A reading of the whole of the section of the charter in which the provision under consideration is contained makes it manifest that the provision is applicable only to contracts for work to be performed directly for the city and county, and that it was not intended to apply to any contract or agreement for the sale or furnishing of completed chattels." However, the section of the charter before the court in that case was not as favorable to the claimant as is section 98 above mentioned. A similar question arose regarding the construction of a public building in New York. It was decided in *Bohnen* v. *Metz,* 126 App. Div. 807 ]111 N. Y. Supp. 196], and affirmed by the court of appeals in 193 N. Y. 676 [87 N. E. 1115]. In that case doors and windows were involved. The court said: "The manufacturer who worked his men more than eight hours and who did not pay the prevailing rate of wages was not a 'subcontractor or other person doing .or contracting to do the whole or a part of the work' within the meaning of the statute. It was necessary that the windows and doors be made to measure, and therefore it was necessary that an order for their manufacture be given. The transaction amounted, however, to a mere purchase of material necessary for the building." Following the latter case, in *Ewen* v. *Thompson-Starrett Co.,* 208 N. Y. 245 [101 N. E. 894], the court made a similar ruling regarding the quarrying, cutting, dressing and trimming of granite for a public building.

The respondent cites *United Iron Works* v. *Standard B. & C. Co.,* 69 Cal. App. 384 [231 Pac. 567] , *Golden Eagle Milling Co.* v. *Old Homestead Bakery,* 59 Cal. App. 541 [211 Pac. 56], *Bancroft* v. *San Francisco Tool Co.,* 120 Cal. 228 [52 Pac. 496] , and *Spencer* v. *Cone,* 42 Mass. (1 Metc.) 283. No one of those cases involved public work and therefore no one of them is helpful.

*Flynn* v. *Dougherty,* 91 Cal. 669 [27 Pac. 1080, 14 L. R. A. 230], is a case involving a contract on a public building; however, it contains nothing helpful on the question before us. The first sentence reads as follows: "The only question involved in this appeal is, whether the con-

tract of the plaintiff, 'to cut, furnish, and deliver' to defendant 'the stone-work of the asylum to be built at Agnew Station, according to the plans and specifications of Mr. Jacob Leuzen and Son, architects', is within the statute of frauds. (Civ. Code, sec. 1739.)''

The respondent stresses the fact that to the contract was attached detailed specifications and plans and furthermore it called for ''mill work'' and he earnestly contends that such facts demonstrate that the transaction was not a purchase and that it was a contract for ''work and labor''. But the question before us is not whether the contract called for work and labor, but whether it was a *"contract for public work"*. Moreover, the argument is not new. An examination of the record in *Neal Publishing Co.* v. *Rolph, supra,* discloses that the same argument was vigorously presented. The hearing of the appeal first arose in the District Court of Appeal. In deciding the case that court adopted said argument and placed its decision largely on that reasoning. (*Neal Publishing Co.* v. *Rolph,* [Cal. App].) The Supreme Court ordered a transfer and in writing its opinion it pointed out that said argument is not helpful in ruling this line of cases.

We think it is quite clear, and therefore hold, that the petitioner's contract was not subject to the provisions of section 98 of the charter hereinabove set forth.

It is therefore ordered that a peremptory writ of mandate issue as prayed.

Nourse, P. J., and Spence, J., concurred.

A petition by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on August 17, 1936.