JOSEPH N. CALLAWAY, Plaintiff, v. N. B. DOWNING Co., a corporation of the State of Delaware, Defendant.

(*June* 21, 1961.)

STOREY, J., sitting.

*Robert W. Tunnell* (of the firm of Tunnell and Raysor) for the Plaintiff.

*Daniel J. Layton, Jr.*, for the Defendant.

Superior Court for Sussex County, No. 88, Civil Action, 1960.

STOREY, J.:

This case comes before me on the following agreed statement of facts. Plaintiff, Joseph N. Callaway, was employed continuously by the defendant, N. B. Downing Co., a corporation of the State of Delaware, from February 24, 1958 to February 5, 1960, as an expert cabinet maker and carpenter. During this period, defendant received various subcontracts to furnish finished millwork to certain general contractors who were engaged in the construction, alteration and repair of various school buildings in the State. Part of the funds used to compensate these general contractors was appropriated by the General Assembly. Plaintiff was employed by defendant to work on these subcontracts. Plaintiff performed all his work at defendant's place of business and did not work at the actual construction sites with the general contractors. However, plaintiff did make occasional visits to these construction sites in order to obtain measurements and other data necessary for the construction of items called for under the subcontracts.

During his employment with defendant, plaintiff received compensation at the rate of $1.90 per hour for 758 hours and 40 minutes. Plaintiff alleges that he was entitled to a minimum wage of $2.60 per hour during his employment, and herein sues for the difference between the wages paid and the minimum wage, *i. e.*, $.70 per hour for 758 hours and 40 minutes, or $531.07. Plaintiff bases his claim on our minimum wage law which reads as follows:

"Specifications upon which contracts are entered into for the construction, alteration or repair of any public work, for which the State appropriates any part of the funds, shall, as far as possible, contain the minimum rate of wages which may

be paid by the contractor, or his subcontractors, for the work performed by laborers and mechanics employed on such public work, and such laborers or mechanics shall be paid not less than such minimum wage or wages." *Del. Code Ann.* tit. 29, § 6913 (1953).

The minimum wage for carpenters, such as plaintiff, was $2.60 per hour.

Both parties have filed motions for summary judgment based upon the pleadings, depositions and agreed statement of facts.

The sole question presented in this case is whether plaintiff is entitled to the benefits of our minimum wage law. Defendant asserts that plaintiff is not so entitled and makes the following two contentions: (1) plaintiff cannot maintain a civil action based on the minimum wage law since it is wholly criminal in nature; and (2) plaintiff was not "employed on such public work" as required by the statute and is therefore not covered by its provisions. I will consider defendant's contentions in this order.

In support of its contention that our minimum wage law is wholly penal in nature and confers no cause of action on plaintiff herein, defendant states that our law is similar to the Federal Bacon-Davis Act, 40 *U. S. C. A.* §§ 276a-276c. The Bacon-Davis Act is "declarative of public policy and penal in nature." *Willis v. E. I. Du Pont De Nemours & Co.*, *D. C. E. D. Okl.* 1948, 76 *F. Supp.* 1010, 1013, reversed 10 *Cir.*, 171 *F.* 2d 51. However, the Bacon-Davis Act specifically provides that if a contractor has failed to pay the minimum wage required, and if funds withheld by the Comptroller General are insufficient to reimburse the laborer for this deficiency in wage payment, then the laborer shall have a right of action against the contractor for the deficiency. 40 *U. S. C. A.* § 276a-2(b); *Willis v. E. I. Du Pont De Nemours &*

*Co., supra,* 76 *F. Supp.* at page 1013. Part of accrued payments due the contractor may be withheld to make up the difference between the minimum wage required and the wage actually paid to laborers. 40 *U. S. C. A.* § 276a. The Comptroller General is authorized to pay wages found to be due any laborer from these sums withheld. 40 *U. S. C. A.* § 276a-2(a).

The scheme of the Bacon-Davis Act seems to be this: sums are withheld from the contractor to make up the difference between the required minimum wage and the wage actually paid a laborer; this sum is paid over to a laborer who received less than the minimum wage; if this sum is insufficient to fully compensate a laborer, then he may sue the contractor for the deficiency.

In comparison, our minimum wage law provides that contracts entered into under the law "shall stipulate a penalty of an amount equal to three times the difference between the minimum wage * * * and the wage actually paid * * *" where the latter is less than the former. *Del. Code Ann.* tit. 29, § 6914 (1953). Inspectors shall check to ascertain if the minimum wages are being paid, and upon finding out they are not so paid, the penalty "shall be withheld and deducted, for the use of the State, from any moneys due the contractor * * *" § 6914, supra. However, § 6914 does not state what disposition is to be made of the penalty withheld other than it shall be deducted "for the use of the State".

Two material differences between our law and the Bacon-Davis Act are apparent: (1) our law does not provide that withheld sums shall be paid to the laborer; and (2) the laborer is not specifically given a cause of action against the contractor under our minimum wage law. The logical inference is that our General Assembly intended that part of the withheld penalty should be paid over to the employee who was paid less than the minimum wage to compensate such employee for the difference between the minimum wage and

the lesser wage he received. It also seems logical to assume that if the employee is not fully compensated, then he may maintain a cause of action against his employer for the deficiency. Such a civil remedy is not specifically denied by the law. However, I am not required to interpret our minimum wage law to this extent for the purpose of deciding the case at bar. I have done so merely to point out that while our law is penal in nature, it is not wholly penal.

 *Del. Code Ann.* tit. 29, § 6916 (1953), a section in Chapter 69 which includes our minimum wage law, provides that violation of any section of the Chapter shall be subject to fines and/or imprisonment. This, of course, indicates that our law is definitely penal in nature. Defendant is correct in its contention that a statute wholly penal in nature will not support a civil remedy. However, based on the similarity between our law and the Bacon-Davis Act, and the construction I have placed upon our law, I do not deem it wholly penal in nature to the extent of denying all civil remedies.

Upon examining minimum wage laws of other jurisdictions similar to our law, I find that it is generally recognized that such laws are enacted to serve a dual purpose, *i. e.,* to assure the employee that the required minimum wage will be paid, and to penalize the employer who fails to pay such wage. Perhaps the leading case is *City of Phoenix v. Drinkwater,* 1935, 46 *Ariz.* 470, 52 *P.* 2d 1175, decided under a statute providing penal sanctions, but affording no civil remedy. In commenting on the statute, the Supreme Court of Arizona had this to say:

"The statute, it will be seen, has a twofold purpose. One is to secure to the individual workman a minimum living wage, fixed by law, and the other is to penalize the employer who fails to pay the wage. With both purposes before us, we certainly think that it would be defeating the intent of the Legislature, so far as the first is concerned, if we were to hold

that the very ones whom the law as intended to protect were helpless to secure that protection, and must satisfy themselves with knowing that somebody had gone to jail or paid a fine for violating the law. Such would, indeed, be a pyrrhic victory for the workman, consoling perhaps to his feelings, but of very little value in giving to him what the law says he has earned and is due him.

\* \* \* \* \* \*

'We hold \* \* \* that in view of the dual purposes of the law, it impliedly carries with it the common-law remedy which alone can insure that the class for whose aid it was adopted may be adequately protected in the right given by the law." *Id., 52 P.* 2d at page 1177.

I approve of the language used by the Arizona Supreme Court, and note that authorities from other jurisdictions are also in accord with this interpretation of minimum wage laws. *Boggs v. Kershaw, Butler Engineers, Ltd.,* 1949, 252 *Ala.* 265, 40 *So.* 2d 320; *Novosk v. Reznick,* 1944, 323 *Ill. App.* 544, 56 *N. E.* 2d 318; *Filardo v. Foley Bros., Inc.,* 1948, 297 *N. Y.* 217, 78 *N. E.* 2d 480; *Fata v. S. A. Healy Co.,* 1943, 289 *N. Y.* 401, 46 *N. E.* 2d 339, 144 *A. L. R.* 1031; *Stover v. Winston Bros. Co.,* 1936, 185 *Wash.* 416, 55 *P.* 2d 821; *Annotation* 144 *A. L. R.* 1035 (1943); 31 *Am. Jur. Labor* § 834 (1958); 56 *C. J. S. Master & Servant* §§ 153(a) (4), 160(1) (a).

Though our minimum wage law carries penal sanctions, I feel the General Assembly intended the law to benefit an employee to the extent that he may maintain a cause of action for the difference between the minimum wage required and the lesser actual wage paid. Any different interpretation would present the anomalous situation of the General Assembly establishing a right without a corresponding remedy, for the penal provisions of the law cannot be said to provide an injured employee with sufficient redress.

Defendant's second contention is more difficult. Defendant argues that plaintiff was not "employed on such public work" pursuant to our minimum wage law, and therefore is not entitled to its benefits. The agreed statement of facts show that defendant's subcontracts were to furnish finished millwork to the general contractors for use in the school buildings; that plaintiff was an expert cabinet maker and carpenter working on these subcontracts for defendant; and that all labor performed by plaintiff was done at defendant's place of business and not at the construction sites, except that plaintiff made various trips to the construction sites to obtain measurements and other data needed in the construction of items called for in the subcontracts.

In support of its contention that plaintiff is not covered by our minimum wage law, defendant attempts to draw an analogy between our law and the Federal Bacon-Davis Act. The Bacon-Davis Act states that minimum wages shall be paid to "all mechanics and laborers employed directly upon the site of the work * * *." 40 *U. S. C. A.* § 276a. Our minimum wage law is far less precise and applies to "laborers and mechanics employed on such public work * * *." *Del. Code Ann.* tit. 29, § 6913 (1953). No requirement that the work be performed directly on the site is laid down in our law. Therefore, the Bacon-Davis Act offers no aid in interpreting our law.

In support of his contention that he is covered by our minimum wage law, plaintiff cites *Hague v. Cleary, Cal.* 1935, 48 *P.* 2d 5. This case involved the construction of a minimum wage law of the City of San Francisco providing that minimum wage provisions must be embodied in " 'every contract for any public work or improvement, exclusive of purchases, to be performed at the expense of the city and county * * *.' " *Id.*, at page 9. The City had drafted a contract for the construction of a psychopathic building. This contract provided that "all materials specially made for use under the contract

shall be manufactured and delivered to the contractor by such concerns only as shall, in the manufacture and delivery thereof, pay their employees wages in accord [with the minimum wage law] * * *." *Hague v. Cleary, Cal. App.* 1934, 39 *P.* 2d 219, 221. In this case it was contended that this provision of the minimum wage law was not applicable to manufacturers of articles specially designed for use in the construction of the building. The lower court held that the wording of the minimum wage law made no distinction between the purchase of standard articles and materials specially manufactured—both were regarded as a purchase and sale and were not included in the minimum wage law provisions. *Hague v. Cleary, Cal. App.* 1934, 39 *P.* 2d 219, 221. The Supreme Court of California disagreed with this interpretation by the lower court and made the following distinction: Contracts involving articles specially made, manufactured and fabricated for use in the building are contracts for work and labor, and are included in the minimum wage law; contracts for the manufacture of standard articles or articles suitable for the general trade are contracts for sale, and are not included in the minimum wage law. Plaintiff relies on this distinction and points out that plaintiff worked on millwork specially designed for use in the school buildings, which labor, according to *Hague v. Cleary*, would be included in the provisions of the minimum wage law.

Before commenting further on the *Hague v. Cleary* decision, I will discuss a California case decided approximately one year after Hague, and involving the same minimum wage law. In *Pacific Mfg. Co. v. Leavy*, 1936, 14 *Cal. App.* 2d 640, 58 *P.* 2d 1292, the question arose as to whether or not the minimum wage law covered millwork manufactured under detailed plans and specifications for installation in a school building. The City of San Francisco awarded a contract for the construction of a school building to the general contractor. The general contractor subcontracted for the millwork to be furnished by petitioner in accordance with detailed plans

and specifications. Petitioner contended such subcontract was not covered by the minimum wage law. The court sustained petitioner's contentions and stated:

"The respondent stresses the fact that to the contract was attached detailed specifications and plans, and furthermore it called for 'mill work', and he earnestly contends that such facts demonstrate that the transaction was not a purchase and that it was a contract for 'work and labor'. But the question before us is not whether the contract called for work and labor, but whether it was a *'contract for public work'.*" *Id.*, 58 *P.* 2d at page 1294.

Thus, the same District Court of Appeals decided the same way as they did previously in *Hague v. Cleary*, and completely ignored the contract of sale for standard articles, and work and labor contract for articles specially manufactured distinction laid down by the Supreme Court of California in *Hague v. Cleary*. It is amazing to note that the District Court of Appeal decided the *Leavy* case without even citing *Hague v. Cleary*. Even more amazing is the fact that the Supreme Court of California denied a petition to hear the *Leavy* case. *Hague* and *Leavy* are absolutely inconsistent, and since *Leavy* is the more recent case, and has the implied approval of the highest court in the State, it must be taken as the final word on the matter in California.

The *Leavy* case is nearly identical with the case at bar, and is directly against plaintiff's contention. In my opinion, it is a sound decision and abolishes an artificial distinction laid down in *Hague*. Let us assume for the moment that we are bound to apply the *Hague* distinction in the case at bar, *i. e.*, that a subcontractor for manufacturing millwork under exact specifications to be used in a public school building is covered by our minimum wage law. Assume further that the subcontractor operates a plant employing 1,000 persons who all have a hand in producing the millwork under the subcontract. The *Hague* rule would require the subcontractor to pay

all 1,000 employees the minimum wage while working on the millwork for this subcontract. Suppose the subcontractor's wage schedule differs from the minimum wage. Is he required to compute the amount of time each employee spent on the subcontract work and alter his pay schedule to comply with the minimum wage for this period of time? The answer is in the affirmative under *Hague*. I could continue to elaborate on the subcontractor's problems. Suffice it to say that a subcontractor under the *Hague* rule would either reject all public service contracts, or be required to employ a large number of bookkeepers.

It can hardly be imagined that our General Assembly had any such result in mind. I admit that my hypothetical case is far more extreme than the case at bar, but the question arises just where does one draw the line. Our General Assembly left it unclear when it stated that the minimum wage law "applies to laborers and mechanics employed on such public work." The General Assembly could have limited the law's application to laborers and mechanics employed directly on the site of the work as was done in the Bacon-Davis Act. I feel the General Assembly intended that only laborers who perform a substantial amount of their work at the construction site should be covered by our minimum wage law. In any event, I do not feel that the minimum wage law was intended to cover an employee of a subcontractor, such as plaintiff, who merely worked on a subcontract to furnish a finished product for use in a public school building, when such work is done almost completely away from the construction site.

A few cases from other jurisdictions should be mentioned. In *Clymer v. Zane*, 1934, 128 *Ohio St.* 359, 191 *N. E.* 123, 125, 93 *A. L. R.* 1245 defendant-contractor was awarded a highway improvement contract. Defendant owned a gravel pit and plaintiffs were employed in the removal of gravel for use on the highway improvement project. Plaintiffs contended

they were employees "upon a public improvement" and thus were entitled to the benefits of the minimum wage law. The Supreme Court of Ohio held against this contention and stated:

"To extend the provisions of the statute to all employees who prepare material for a public improvement would be to include within the provisions of the law the employees of a cement factory which makes cement for a public improvement, and the employees of a brick plant which makes paving brick for a public highway, if such cement plant or brick factory is owned or operated by the contractor in charge of the public improvement. Such a construction would likely lead to conflicts with regulations and 'codes' governing wages of other industries. Clearly it was not the intention of the Legislature to extend the provisions * * * so far." *Id.*, 191 *N. E.* at page 126.

In *Bohnen v. Metz, 1st Dept.* 1908, 126 *App. Div.* 807, 111 *N. Y. S.* 196, *affirmed memorandum* 193 *N. Y.* 676, 87 *N. E.* 1115, defendant contracted to erect a municipal building, and subcontracted with a manufacturer who was to furnish doors, windows and other woodwork for the special purpose of being used in the building. The court held that employees of the manufacturers were not covered by the minimum wage law. The court stated:

"[T]he persons employed in the manufacture of the doors, windows, and woodwork ultimately used in the building were not employed 'on, about, or upon such public work' within the meaning of the statute; and hence it was unimportant whether they were employed more than eight hours a day or were paid the prevailing rate of wages." *Id.*, 111 *N. Y. S.* at page 199.

The *Bohnen* case was followed in the later New York case of *Ewen v. Thompson-Starrett Co.*, 1913, 208 *N. Y.* 245, 101 *N. E.* 894. Here the defendant-contractor on a municipal

building sublet the granite work to a subcontractor. The subcontractor performed the quarrying, cutting, dressing and trimming of the granite to specification on a site other than the construction site of the building. The Court held that employees of the subcontractor were not covered by the minimum wage law since they were not employed " 'on, about or upon' the public work of constructing the municipal building in the city of New York within the intent of the act * * *." *Id.*, 101 *N. E.* at page 896.

Based upon the construction I have placed upon our minimum wage law, supported by the authorities above-cited, I hold that plaintiff is not covered by the provisions of our minimum wage law. Therefore, I must deny plaintiff's motion for summary judgment, and grant defendant's motion for summary judgment.

On presentation, Order, in conformity with this decision, will be entered.