**STATE of Delaware, upon the relation and for the Use of William J. CHRISTO-PHER, Jr., et al., Plaintiffs,**

**v.**

**PLANET INSURANCE COMPANY, a corporation of the Commonwealth of Pennsylvania, et al., Defendants.**

Superior Court of Delaware,
New Castle.

May 24, 1974.

William D. Bailey, Jr., and Richard K. Herrmann, of Bayard, Brill & Handelman, Wilmington, for plaintiffs William J. Christopher, Jr. and Andrew J. Lindell.

Howard L. Williams and Edward M. McNally, of Morris, James, Hitchens & Williams, Wilmington, for defendant Planet Ins. Co.

David Roeberg, of Potter & Roeberg, Wilmington, for defendants Cedar Electric Service, Inc. and Angela M. and Michael Zeccola.

David K. Brewster, Deputy Atty. Gen., Wilmington, for Dept. of Labor, State of Delaware.

## OPINION ON MOTION OF DEFEND-ANTS FOR SUMMARY JUDGMENT

TAYLOR, Judge.

Plaintiffs, as employees of defendant Cedar Electric Service, Inc. [Cedar], performed work as electricians in the construction of the Margaret S. Streck School of the Newark Special School District for a period which ended April 13, 1972. Plaintiffs seek to recover pursuant to statutory provisions hereinafter discussed, because they were not paid according to the wage rates set forth in the specifications for the construction project. Plaintiffs seek recovery from Cedar, Angela M. Zeccola and Michael Zeccola, owners of Cedar, and Planet Insurance Company [Planet], the bonding company which executed the bond provided by the general contractor on the project. Defendants Cedar and Zeccola have moved for summary judgment, contending that the wage rate upon which plaintiffs base their claim was not validly established and that plaintiffs are not entitled to the extensive recovery which they seek. Defendant Planet has moved for summary judgment on the ground that the bond which it furnished does not extend to a claim such as that of plaintiffs. Plaintiffs seek summary judgment in favor of their claim.

## LIABILITY OF CEDAR AND ZECCO-LA FOR THE SPECIFIED WAGE RATE

29 Del.C. § 6913 required a contract for a project such as this to contain a provision requiring payment of minimum wages as set forth in the advertising specifications and that there be a stipulation in every contract based on the specifications that the contractor or his subcontractor shall pay all mechanics and laborers employed directly on the site of the work at not less than those wage rates. Defendants Cedar and Zeccola contend that they are not bound by the wage rates contained in the contract and specifications because the wage rates were not established in accordance with the statute. The statute required that the wage rates be determined by the Department of Labor and Industrial Relations of this State "to be prevailing for the corresponding classes of laborers and mechanics employed on projects of a character similar to the construction work in the city, town, village or other civil subdivision of the State in which the work is to be performed." The statute further provided:

"Determination of the prevailing wage rates shall be based on the average of the actual wages paid to a majority of the employees employed in the type construction work involved, and performing the work in the county for which a prevailing wage is being determined."

The contention is that the minimum wage rate determined by the Department of Labor and Industrial Relations was not established in accordance with the above-quoted standard.

Defendants' defense is not a direct attack upon the wage rates, but rather an attempt to repudiate a contract by which the parties bound themselves to pay the stated rates. Cf. Fata v. S. A. Healy Company, 289 N.Y. 401, 46 N.E.2d 339 (1943). This contract did not refer to wage rates yet to be determined by the Department, but rather specified fixed rates to be paid. It must be assumed that all who submitted bids on this project did so with knowledge of the required rates and in contemplation of paying those rates. The public policy embodied in the bidding laws forbids granting to the successful bidder or his subcontractor a benefit not extended to others who submitted bids or might have submitted bids. Bader v. Sharp, 35 Del. Ch. 57, 110 A.2d 300 (1954).

The contract which was entered into contemplated payment of those rates as an element of consideration. An attempt to escape those rates is an attempt to repudiate or breach the contract, as well as to gain an advantage over others who submit-

ted bids for the job. Public policy should not countenance such result.

An attempt to revise the minimum wage rates upward after execution of the contract would properly be resisted on the ground that it was an attempt to change a binding contractual obligation. This attempt to revise the rates downward or to escape the rates is subject to the same disability.

■ These defendants having accepted the benefits of the contract cannot now attack the method by which one of the terms of the contract was derived. This is not a direct attack upon an administrative finding, but rather an avoidance of the bidding process and the contract entered into thereunder. See Industrial Commission v. State Federation of Labor, 107 Colo. 206, 110 P.2d 253 (1941).

The fact that the statute existing at that time did not provide machinery for challenging the finding of the Department of Labor and Industrial Relations does not relieve defendants of the binding nature of their contract. United States v. Kissinger, 3 Cir., 250 F.2d 940 (1958), relied upon by defendant, in passing upon the constitutional validity of the statute in question, specifically noted that the Court was considering the constitutionality of the statute and that it "is quite a different question from whether the farmer's quota is proper . . . .". The inference from *Kissinger* is that the Court would not have considered an attack upon the method of establishing the quota after the party had received benefits under it. Langton v. Brady Electrical Co., R.I., 216 A.2d 134 (1966)

involves a tax assessment and did not involve a contractual relationship.

In view of the determination just made, it is unnecessary to consider the propriety of the method used by the Department of Labor and Industrial Relations in arriving at the wages rates. However, the Court observes in view of the record in this case, that it is desirable that the Department preserve by appropriate documentation the data underlying the rates and appropriate evidence showing compliance with the statutory provision.

### REMEDY AVAILABLE TO PLAINTIFFS

The next issue is what remedy, if any, is available to plaintiffs as a result of the failure of Cedar to pay the wage rate required by the contract. 29 Del.C. § 6913, as it existed at the time plaintiffs worked for Cedar, contained no provision permitting enforcement by an employee who was not properly paid.[1]

This Court held in Callaway v. N. B. Downing Co., Del.Super., 3 Storey 493, 172 A.2d 260 (1961) that notwithstanding the absence of a statutory provision for recovery, an employee who was not paid according to the requirements of § 6913 was entitled at common law to recover the difference between the wage actually paid and minimum wage required under the Section.

Plaintiffs contend that they are entitled to recover the unpaid wages as provided in the contract pursuant to 29 Del.C. § 6913, together with liquidated damages as permitted by 19 Del.C. § 1103(d) and attorneys' fees as permitted by 19 Del.C. § 1113. Chapter 11 of Title 19 Delaware Code was

1. In May 1972, § 6913 was amended to provide:
    "Any laborer or mechanic employed by any contractor or subcontractor who is paid in a sum less than the prevailing wage rates provided for under this section shall have a right of action against the contractor or subcontractor in the superior court to recover the difference between the amount so paid and the prevailing wage rate plus interest at 6 percentum

per annum . . . In the event that there is a willful failure or refusal by the contractor or subcontractor to pay the prevailing wage rate, the contractor or subcontractor shall pay treble the difference between the amount so paid and the prevailing wage rate . . . ". 58 Del.Laws, Ch. 408. It is not contended that this section is applicable to plaintiff's claim.

enacted by the General Assembly in 1965 (55 Del.Laws, Ch. 19) to provide for payment of wages and to enforce their collection. Section 1102 requires an employer to pay "all wages due to his employees on regular paydays designated in advance by the employer . . .". Section 1107 forbids an employer to withhold or divert any portion of an employee's wages with the exception of deductions provided by State or Federal law, deductions for medical, surgical or hospital care, or deductions authorized in writing by the employee. Section 1103(d) provides that:

"[i]f an employer, without any reasonable grounds for dispute, fails to pay an employee wages, as required under this chapter the employer shall, in addition, be liable to the employee for liquidated damages in the amount of 10 per cent of the unpaid wages for each day except Sunday and legal holidays upon which such failure continues after the day upon which payment is required or in an amount equal to the unpaid wages, whichever is smaller; except that, for the purpose of such liquidated damages, such failure to pay shall not be deemed to continue after the date of the filing of a petition in bankruptcy with respect to the employer if he is adjudicated bankrupt thereupon."

■ The term "wages" is not precisely defined. Defendants argue that the wages contemplated by the chapter are those agreed upon between the employee and employer and not those referred to in 29 Del. C. § 6913. It is clear that the General Assembly intended to establish a broad liberal public policy favoring full and prompt payment to employees. It is also clear that this chapter was intended to apply to instances where formerly the right of the employee was to recover by an action at common law. Applying this policy, the Court concludes that Chapter 11 applies to the amount of compensation to which an employee is entitled to be paid for his serv-

ices without distinction as to the source of the right of employee to receive a particular amount of wages, whether that source is direct contract between employer and employee, contract between employer and a third party under which employee is a beneficiary, or statute.

· ■ Nothing in the chapter shows an intention to exclude workers on public projects from the benefits of the chapter. In general, the law provides greater protection for those who work on public projects than for other workers. It must be concluded that the General Assembly did not intend to deprive workers on public projects of a new protection adopted for workers generally. The Court concludes that wages required to be paid by virtue of a contract provision inserted in compliance with 29 Del.C. § 6913 are "wages" within the meaning of Chapter 11 of Title 19, Delaware Code, and as such their payment may be enforced as provided in the latter statute. It is noted also that 19 Del.C. § 1105 makes the general contractor civilly liable for payments of wages due employees of a subcontractor.

## LIQUIDATED DAMAGES OF CEDAR AND ZECCOLA UNDER 19 Del.C. § 1103

■ There remains the question of whether at the time employer failed to pay the wages provided in the contract specifications there existed any reasonable grounds for dispute as to the duty of employer to pay according to those wage rates. The right to recover liquidated damages is dependent upon the absence of reasonable grounds for dispute. 19 Del.C. § 1103(d). The parties have not addressed themselves to the facts contemporaneous with the payment of the wages to plaintiffs, and hence, the record does not permit the Court to dispose of the question of whether a reasonable dispute existed at that time. Accordingly, this issue remains for future disposition.

## LIABILITY UNDER THE BOND FOR WAGE RATES REQUIRED BY 29 Del.C. § 6913

The issue raised by Planet is that plaintiffs are not entitled to recover on the bond which the prime contractor supplied to the State.

29 Del.C. § 6910 required the successful bidder to provide a bond which would provide as one of its conditions for the faithful compliance and performance of the terms of the contract and specifications and for the "payment in full, to every person furnishing material or performing labor in the performance of the contract, of all sums of money due him for such labor or material". It will be noted that the bond required by the statute assures compliance with the terms of the contract and specifications as well as payment in full to persons performing labor in the performance of the contract.

29 Del.C. § 6913 requires the minimum wages rates to be set forth in the specifications and made a part of the contract. Apparently this was done here. Hence, payment of the wage rates is an item required by the contract to be complied with, and hence within the coverage of the bond required under § 6910.

■■ Planet contends that since § 6913, in its present form, contains its own enforcement provision, plaintiffs are not entitled to assert a claim under the bond. This argument is based upon an amendment of § 6913 which became effective May 24, 1972, after plaintiffs performed the work upon which this claim is based. It is not necessary to consider whether an employee performing work after May 24, 1972 is limited to recovery under § 6913. At the time of performance of work by plaintiffs, no specific remedy was provided in § 6913. The rights of the parties to this action became firm before § 6913 was amended. Nothing in the amendment indicates an intent to affect or limit rights which accrued before enactment of the amendment. In the absence of clear language to the contrary, a statute will not be construed as destroying rights existing at the time of enactment. Keller v. Wilson, Del.Supr., 21 Del.Ch. 391, 190 A. 115 (1937).

Planet contends that the amendment to § 6913 was remedial or procedural in nature and hence is applicable to this case even though this claim arose before the amendment. The argument is that the section did not change the remedy but merely provided a different means of enforcing it. The fallacy of this argument when applied to Planet is that it would eliminate plaintiffs' right of action against Planet and Planet's liability to plaintiffs notwithstanding the prior existence of such right and liability. A statutory change which produces these results must be held to make substantive changes and not merely remedial or procedural changes. The significance of this is further emphasized by Planet's contention that the amendment to § 6913 could not entitle plaintiffs to recover treble damages as provided in the amendment.

Finally, the wage rates purporting to comply with § 6913 were inserted in the specifications and incorporated in the contract and as such were protected by a bond. All of these occurred before the 1972 amendment of § 6913. The relationship of the parties became firm before the 1972 amendment and were not altered by adoption of the amendment.

## LIABILITY UNDER BOND TO EMPLOYEES OF SUBCONTRACTOR

Planet next contends that liability under the bond exists only where there is privity of contract between the general contractor and the party suing, citing Board of Education v. Aetna Casualty & Insurance Co., Del.Super., 152 A. 600 (1930). The holding of *Aetna* is that the liability of the surety on the statutory bond is coextensive with the liability of the general contractor. *Aetna* turned upon the statutory phrase "for which the successful bidder is liable". *Aetna* held that the employee of a subcon-

tractor has no contractual relationship with the general contractor and, hence, under contract law the general contractor had no liability to pay the wages of the subcontractor's employee.

19 Del.C. § 1105 provides:

"[w]henever any person shall contract with another for the performance of any work which the contracting person has undertaken to perform, he shall become civilly liable to employees engaged in the performance of work under such contract for the payment of wages, exclusive of liquidated damages, as required under this chapter, whenever and to the extent that the employer of such employees fails to pay such wages, and the employer of such employees shall be liable to such person for any wages paid by him under this section."

By this provision, the general contractor became "civilly liable" to the subcontractor's employees such as plaintiffs for payment of wages. This section, therefore, filled the gap which existed in *Aetna*. 19 Del.C. § 1105 made the general contractor liable for wages which were due and not paid plaintiffs. The bond statute requires that the bond assure full payment to every person performing labor in the performance of the contract of all sums due for such labor, and permits suit by such persons for such sums as are due from the general contractor. Earlier in this Opinion, it has been held that the wages which are covered by the payment provisions of 19 Del.C., Ch. 11 include those specified in the contract executed by the general contractor. By virtue of 19 Del.C. § 1105, such sums are due from the general contractor to a subcontractor's employees. If it is contended that the contractor's liability goes beyond the terms of the bond, the answer is that where bond is supplied under 29 Del.C. § 6910, provisions in the bond which are more restrictive than required by that section are void and the bond must be held to cover the full liability provided in § 6910. State v. Fidelity

and Deposit Company of Maryland, Del. Supr., 194 A.2d 858 (1963).

Planet also contends that State v. Fidelity and Deposit Company of Maryland, supra, holds that the surety on a bond filed under the predecessor of § 6910 is liable only where there is a contract directly between the general contractor and the party suing. In making this argument, Planet quotes an excerpt from page 860 of 194 A.2d from which Planet concludes that the Supreme Court held that the surety was not liable for work done under a subcontract with the general contractor to which plaintiff was not a party. Planet's reliance is misplaced. From the Opinion it is not certain whether the Supreme Court was actually deciding the point for which Planet argues. An examination of the briefs and appendices filed with the Supreme Court shows that the issue was whether certain work which plaintiff had performed should be considered in determining the completion date of its work under the contract sued on. The determination of the Supreme Court was that the work relied upon by plaintiff had not been done as a part of the contract under which plaintiff sued and that plaintiff in fact had done the work under a different subcontract and had been paid for the work. The issue of whether the surety is liable for work for which plaintiff did not contract directly with the general contractor was not argued to the Court. The conclusion is that the Supreme Court by the language relied upon by Planet did not hold as Planet contends.

Planet cites Callaway v. N. B. Downing Co., supra, in support of limiting the applicability of § 6910 to employees of a general contractor. *Callaway* involved the question of whether an employee of a subcontractor whose work was done almost completely away from the construction site was entitled to the minimum wage provided in § 6913. The applicable statutory language covered "work performed by laborers and mechanics employed on such public work". This Court held that the

statute applied only to laborers who perform a substantial amount of their work at the construction site. *Callaway* limits the statutory coverage to those whose work in substantial part is at the job site, but it does not bar those who work at the site for a subcontractor rather than the contractor. The distinction between working at the site in contrast to working elsewhere is of importance in determining rights and liability in the construction field. In this instance, it is not contended that plaintiffs did not do their work at the construction site.

Planet draws upon the analogy of the Miller Act holdings, citing Mac Evoy v. United States, 322 U.S. 102, 64 S.Ct. 890, 88 L.Ed. 1163 (1944). *Mac Evoy* turned upon a provision of the statute which defined those who were required to give special notice to the general contractor, and concluded that Congress must have intended to limit the protection provided by the general contractor's bond to those from whom the general contractor was entitled to statutory notice of claim.

Planet points out that subsection (d) of § 6910, which specifies those who are entitled to sue on the bond provides that action may be brought by persons "furnishing materials or performing labor under the contract". The requirement is that the person must have furnished material or performed labor *under the contract*. The contract referred to is that between the general contractor and the public agency.

Two possible meanings of the phrase "under the contract" are apparent. The phrase could refer to performance of the contract, or it could refer to the performance of the work specified in the contract. Pursuing the strict first alternative, only a party to the contract could perform the contract. Those who are not parties to the public contract in fact furnish material or perform labor do so pursuant to a contract between them and the general contractor —but not pursuant to the contract referred to in the statute. Giving the statute the

narrow construction, only the general contractor could supply or furnish "under the contract", and the statutory bond protection would be meaningless.

The second alternative is to construe the phrase "under the contract" as referring to the project or work specified in the contract. This is consistent with the language of the subsection. The reference to those who perform labor or furnish materials indicates a recognition that the phrase was not intended to be confined to a party to the public contract. It seems clear that the phrase "under the contract" was intended to refer to the project or work and not to refer to a contractual relationship. Moreover, it is consistent with the reality of construction projects that such projects are performed by those having varying degrees of contractual remoteness or proximity to the general contractor. It is not unusual for much or all of the work on the project to be done by subcontractors. If the section had been intended to be confined to those contracting directly with the general contractor, such a simple limitation could have been inserted.

∎ Once it is accepted that the phrase refers to the work rather than the contractual relationship, it is apparent that those who work on the project for a subcontractor are performing work "under the contract" as much as those who work alongside of them for the general contractor.

There is no basis under the language of the subsection for confining its applicability to those who dealt directly with the general contractor. No statutory favoritism exists here, such as was found to exist in the Miller Act.

The language of § 6910(d) tends to support the conclusion reached above. Immediately following the phrase discussed above is the phrase "for which the successful bidder is liable". If the phrase discussed above had been intended to be limited to instances of direct contractual relationship with the general contrac-

tor, the phrase which limits liability to instances where the successful bidder is liable would be unnecessary. If direct contractual relationship is the determinant, the general contractor would be liable whenever he is a party to a contract and would not be liable where he is not a party to the contract. Liability would, in such case, be coextensive with direct contractual relationship. It must be assumed that the phrase "for which the successful bidder is liable" was inserted to place a limitation upon the prior phrase. Therefore, it is concluded that the prior phrase refers to a broader relationship than simply a direct contractual relationship. The Court has held above that the latter phrase relates to liability generally and not merely to contractual liability.

Planet also contends that § 6910(b) bars plaintiffs' recovery. This subsection refers to payment to persons "furnishing material or performing labor in the performance of the contract". Some of the considerations discussed in connection with $6910(d) are applicable here, although superficially "in the performance of the contract" might be considered to be less restrictive than "under the contract". The effect of statutory language not dissimilar to that involved here is reviewed in an annotation in 92 A.L.R. 2d 1250, 1261. The majority of the decisions support the right of the employees of the subcontractor to recover on the general contractor's bond. The language of § 6910(b) does not appear distinguishable from the more cumbersome phrase "furnishing material or performing labor in and about the prosecution of the work provided for in said contract", which was held in Wilmington Housing Authority v. Fidelity & Deposit Co., Del.Supr., 4 Terry 381, 47 A.2d 524 (1946) to protect an employee of a subcontractor.

It is noted that the language of § 6910(b) and that of § 6910(d) relating to liability and recovery differ. The use of different language frequently indicates a different meaning or result. It is one factor to be weighed in determining the meaning of the language. The analysis of the statutory language indicates that the different language used in the amendments which were adopted in different years, does not connote a difference in meaning insofar as it involves the issues considered in this Opinion.

Plaintiffs contend that they are entitled to recover by virtue of the terms of the bond, regardless of the statutory language. To the extent that the bond provides benefits which are not required by the statute, plaintiffs must show compliance with the requirements of the bond. Cf. Board of Education v. Aetna Casualty & Surety Co., supra; State v. Fidelity & Deposit Company of Maryland, supra. Here, plaintiffs have not shown that they have complied with notice requirements of the bond. Accordingly, their rights are limited to those provided in the statute.

## LIABILITY UNDER BOND FOR LIQUIDATED DAMAGES AND ATTORNEYS' FEES UNDER 19 Del.C. § 1103

The liability of surety discussed above relates to the actual amount of wages required to be paid under the wage rate provision of the contract and has not dealt with the claim for liquidated damages and attorneys' fees. 19 Del.C. § 1105, which makes the prime contractor liable for wages to employees who perform work under the contract, excludes "liquidated damages, as required under this chapter . . . ". Chapter 69, 29 Del.C. as it existed at the time plaintiffs performed work does not provide for liquidated damages or attorneys' fees for failure to pay the minimum rate. Hence, the general contractor did not have liability either under the terms of the contract or under the terms of 19 Del.C. § 1105 for payment of liquidated damages or attorneys' fees. The statutory liability of the surety paralleled that of the general contractor. According-

ly, Planet is not liable under the statute for liquidated damages or plaintiffs' attorney fees.

## PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

With respect to plaintiffs' motion for summary judgment, Cedar, plaintiffs' employer denies that plaintiffs worked in the classification of journeymen electricians. It is the wage rate applicable to that classification that plaintiffs claim. A fact issue, therefore, exists which bars granting plaintiffs' motion.

Plaintiffs will submit an order on notice within ten days.