ACTION ELECTRIC COMPANY, INC., a Utah corporation, Plaintiffs,

v.

The INDUSTRIAL COMMISSION OF UTAH, Defendant.

No. 16731.

Supreme Court of Utah.

Sept. 10, 1981.

Ray M. Harding, Jr., Pleasant Grove, for plaintiffs.

David L. Wilkinson, Frank V. Nelson, Salt Lake City, Ronald E. Terry, Spanish Fork, for defendant.

OAKS, Justice:

This case seems to have two of everything except briefs. A brief has been filed by the employer, Action Electric, but this Court has not been favored with a brief from the Industrial Commission. The employer seeks to set aside a Commission order holding it liable for an employee's compensation claim of $1,953.49, plus a statutory penalty of $293.02. At issue is the effect of two different sets of statutes that have been confused and intertwined in a tangle this Court must attempt to unsnarl. All statutory references are to Title 34, Utah Code Annotated, 1953.

Chapter 28, enacted in 1919 and 1937 and referred to hereafter as the "wage payment legislation," requires employers to make timely and regular payment of wages to their employees, to give notices of their rate and date of payment, to settle wages due promptly upon voluntary or involuntary severance (on pain of a prescribed penalty), and to keep payroll records (§§ 34–28–3, 28–4, 28–5, and 28–10). The wage payment legislation is apparently aimed at helping those whose employment contracts are silent on its subject matter. It is expressly inapplicable to "employment where an agreement exists between employer and employee providing for different terms of payment . . ." (§ 34–28–1).

Violation of the wage payment legislation is punishable as a misdemeanor (§ 34–28–12). In addition, the Industrial Commission has the duty of ensuring compliance with the provisions of the chapter. To that end, the Commission is authorized to investigate, hold hearings, and determine the validity of any claim of violation. If it determines that a violation has occurred, "it shall enter its order or award in accordance with the requirements of this chapter" (§ 34–28–9, as amended). The Commission is also authorized to take assignments of wage claims or other designated rights from employees in amounts of up to $400 per claim and enforce them against their employers (§ 34–28–13). A Commission award becomes a lien against the real property of the employer when it is filed in the office of the clerk of the district court and docketed in his judgment docket. A Commission order can be appealed to the district court for the county where either party resides, which "shall hear such matters de novo, making its own determination both as to the facts and the law" (§ 34–28–9, as amended in 1975).

Chapter 30, enacted in 1933 and referred to hereafter as the "prevailing wage legislation," requires employers of "laborers, workmen, apprentices and mechanics" in behalf of the state or any county, city, district or other political subdivision, including contractors or subcontractors on public works, to pay "not less than the general prevailing rate of wages per hour for work of a similar character in the locality in which the work is performed . . ." (§ 34–30–2).[1] Public bodies awarding contracts for public works are required to ascertain and publish the general prevailing rate of wages in their call for bids, and to provide in their contracts that the contractor and subcontractor shall pay not less than these amounts "to all laborers, workmen, apprentices and mechanics employed by them in the execution of the contract" (§ 34–30–3). The statute also requires a contract provision that upon failure or refusal to pay the required amounts the employer shall "forfeit to the industrial commission as a penalty" the difference between the amounts actually paid to its employees and the amounts that would have been paid to all employees at the prevailing wage rate, plus 15 percent (§ 34–30–4).

Chapter 30 also requires public bodies to monitor wage payments and report viola-

1. The prevailing wage legislation has since been repealed, 1981 Utah Laws ch. 165, but this appeal is not moot insofar as it concerns any rights vested under Chapter 30 prior to its repeal. *Ettor v. Tacoma*, 228 U.S. 148, 33 S.Ct. 428, 57 L.Ed. 773 (1913).

tions to the Commission. If, after notice and hearing, the Commission finds a violation, it "shall make an order authorizing the public body to withhold and retain from the contract price a sum equal to the amount of the penalties assessed against the contractor." The sum so withheld is paid over to the Industrial Commission, which disburses to the employees the amount necessary to bring their total compensation to the prevailing rate, and retains the balance as a fund to enforce the provisions of Chapter 30 (§ 34–30–5). Employers are also required to keep employment and payroll records and make them available for official inspection. Employers who fail to do so, and public officials (but not employers) who violate any of the provisions of the prevailing wage legislation, are guilty of a misdemeanor (§ 34–30–9).

In contrast to the wage payment legislation, there are no statutory provisions in the prevailing wage legislation bearing directly on an individual employee's right of action against his employer for compensation owing.

This controversy began in January, 1979, when Ronald E. Terry complained to the Industrial Commission that he had not been paid the prevailing wage for the 473 hours he worked for Action Electric on a school project in Nephi. Terry was employed under an employment contract that specified a base salary of $20,000 per year (plus a bonus if the job was finished earlier than scheduled), a one-week paid vacation, and a paid medical insurance plan.

In initiating his complaint, Terry gave the Commission a form that "assign[ed] the said wages to the Industrial Commission of Utah to collect as provided by 34–30–1 through 12, U.C.A., 1953." (Chapter 30, the prevailing wage legislation, has no wage assignment provisions, these being contained in the wage payment legislation in Chapter 28). The Commission issued notice to the employer and held a hearing on Terry's complaint that he was not paid the prevailing wages. This hearing was held before a "Wage Claim Hearing Examiner," and was specified to be under the provisions of Chapter 28, the wage payment legislation. In May, 1979, the examiner found in favor of the employee and issued an order for payment in the amount of $1,957.62.

On reconsideration, the examiner scheduled a second hearing, and on June 15 issued another order for payment, this one in the amount of $1,953.49. The findings and computations leading to that amount make no mention of the prevailing wage. Like the first order, this order is styled a "wage claim" and is expressed to be made pursuant to Chapter 28. In apparent reliance on that chapter, it states that it will become final within 15 days unless appealed to the district court and would become a lien on the employer's real property upon docketing with the clerk of the district court. In furtherance of the confusion with the prevailing wage legislation in Chapter 30, however, the order also states that "the penalty as provided for in 34–30–4 will apply."

The employer promptly filed an appeal in the district court. The disposition of that appeal does not appear in the record. On July 10, 1979, the Industrial Commission served notice on the employer of another hearing in this matter, to be held on August 8th. This notice still treated the matter as a wage claim under Chapter 28. On July 17, 1979, the Industrial Commission issued an "Amended Order for Payment." Its content was the same as the June 15th order, except that the July 17th order directed that the appeal be taken from the hearing examiner to the Industrial Commission, rather than to the district court.[2] Thereupon, the employer obediently and promptly took its appeal to the Industrial Commission from the July 17th order.

On July 17, 1979, the Industrial Commission also issued an amended notice of the August 8th hearing, calling the hearing in

---

**2.** As amended in 1975, § 34–28–9 is ambiguous on whether the appeal lies to the district court directly from the hearing examiner (§ 34–28–9(3)) or only after the Industrial Commission has entered its order or award following action by the hearing examiner (§ 34–28–9(1), (2), and (3)). We favor the latter interpretation.

accordance with the provisions of Chapter 30, and referring for the first time to the employee's assignment of wages as being "under Section 34–30–2" (the prevailing wage section). On August 8th, the entire Commission held a hearing on the employer's appeal. On September 26th, the Industrial Commission denied the employer's motion to review the July 17th order, and assessed a penalty in the amount of $293.02 under § 34–30–4, payable to the Industrial Commission. The employer thereupon petitioned this Court to review and set aside the order of the Industrial Commission.

The problem with this case, as demonstrated conclusively in the employer's brief, is that the employee and the Industrial Commission have sought to merge the substantive rights, duties, procedures and penalties of two different chapters, 28 and 30, without regard to the limitations applying to each.

Chapter 28 provides no legal basis for the Commission's action in this case. That chapter imposes duties on the employer pertaining to notice and record keeping and the timely and regular payment of wages. Chapter 28 imposes no duty pertaining to the *rate* of wages that shall be paid, which is the sole issue in this case. Chapter 28 is also inapplicable because the employee in this case had an individual employment agreement (§ 34–28–1). Finally, even if Chapter 28 had applied, the Commission could not rely on the employee's wage assignment as the basis for its $1,953.49 order against the employer since the Commission's enforcement rights under such an assignment are limited to $400 on any one claim (§ 34–28–13). All of the Industrial Commission's proceedings and orders relying on Chapter 28 must therefore be set aside. This includes all that was done prior to July 17, 1979, when the Industrial Commission for the first time scheduled a hearing under Chapter 30.

The remaining question is whether Chapter 30, the prevailing wage legislation, provides a basis for a Commission order that an employer pay an individual employee the amount by which the statutorily defined "prevailing wage" exceeds the amount the employer has already paid him or her. No such power is conferred on the Commission by Chapter 30, whose only remedy, in addition to the partially applicable criminal penalty, is its authorization for the Commission to "make an order authorizing the public body to withhold and retain from the contract price [and pay to the Commission for payment to the employees] a sum equal to the amount of the penalties assessed against the contractor" (§ 34–30–5). In short, the prevailing wage legislation does not authorize the Industrial Commission to administer a remedy in favor of the employee against the employer for failing to pay the prevailing wage.[3]

We offer no opinion on the question of whether or not an employee has a common-law remedy, enforceable through the courts, against his or her employer for failure to pay the statutorily mandated prevailing wage, as some courts have held. *Callaway v. N. B. Downing Co.*, 53 Del. 493, 172 A.2d 260 (1961); *Fata v. S. A. Healy Co.*, 289 N.Y. 401, 46 N.E.2d 339 (1943).

In view of this disposition of the case, we need not deal with the other assignments of error in the brief filed by the employer.

The order of the Industrial Commission is set aside.

HALL, C. J., and STEWART and HOWE, JJ., concur.

MAUGHAN, J., heard the arguments, but died before the opinion was filed.

---

**3.** Even if Chapter 30 were otherwise applicable to the circumstances of this case, the Commission's order is deficient in its omission of any finding that the work for which the prevailing wage was not paid was the work to which the statute applies: laborer, workman, apprentice or mechanic. The employee in this case was a supervisor.