Robert Ewen, Appellant, v. Thompson-Starrett Company et al., Respondents.

Labor Law — provision for payment of prevailing rate of wages on municipal work — New York (city of) — statute not violated by payment of lower rate of wages for quarrying and dressing stone in foreign state than that paid in New York city because stone was used in municipal building in New York city.

The contractor for the construction of a municipal building in the borough of Manhattan, city of New York, sublet the granite work to a Maine corporation. The work of quarrying, cutting, dressing and trimming the granite was done in the state of Maine and the workmen were paid three dollars per day, the prevailing rate of wages there. The prevailing rate of wages for the same class of work in the city of New York was four dollars and fifty cents per day. The contractor and the sub-contractor had both agreed to comply with the Labor Law, section 3 of which provides that the wages to be paid for a legal day's work upon all "such public works or upon any material to be used upon or in connection therewith shall not be less than the prevailing rate * * * in the locality within the state where such public work on, about or in connection with which such labor is performed * * * is to be situated, erected or used." (Cons. Laws, ch. 31.) *Held*, that the quarrymen and stone-cutters in Maine were not employed " on, about or upon " the public work of constructing the municipal building in the city of New York within the intent of that act, and hence section 3 of the law was not violated by defendants. (*Bohnen* v. *Metz*, 126 App. Div. 807; affirmed on opinion below, 193 N. Y. 676, followed.)

*Ewen* v. *Thompson-Starrett Co.*, 151 App. Div. 923, affirmed.

(Argued March 24, 1913; decided April 22, 1913.)

Appeal from a judgment of the Appellate Division of Supreme Court in the second judicial department, entered June 26, 1912, affirming a judgment in favor of defendants entered upon a dismissal of the complaint by the court on trial at Special Term.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Clarence J. Shearn* for appellant. When the legislature required that every contract for municipal work should contain a covenant on the part of the contractor that the wages to be paid for a legal day's work to all classes of laborers upon the public work or upon any material to be used thereon shall not be less than the prevailing rate for a day's work in the same trade or occupation in the locality where such public work is being constructed, the legislature adopted a very practical and, in fact, the only effective means of compelling the law to be enforced. (*People ex rel. Cossey* v. *Grout,* 179 N. Y. 417.) The contractor's violation of his contract constitutes a violation of the Labor Law. (*People ex rel. O'Brien* v. *Van Wyck,* 27 Misc. Rep. 439.)

*Morgan J. O'Brien* for Thompson-Starrett Company, respondent. The statute, section 3 of the Labor Law, does not apply to work done or wages paid by the contractor or sub-contractor outside the state of New York. (*Bohnen* v. *Metz,* 126 App. Div. 807; 193 N. Y. 676.)

*Archibald R. Watson, Corporation Counsel* (*Terence Farley* of counsel), for city of New York, respondent. As the penal laws of a state are strictly local in their character and effect, there can be no recovery for an offense under them committed beyond the territorial jurisdiction of the state. (*Bonhen* v. *Metz,* 126 App. Div. 807; 193 N. Y. 676; Bishop on Written Laws, § 141; Black on Interp. of Laws, 91; Endlich on Interp. of Stat. § 169; Lewis' Suth. on Stat. Const. § 13; Rorer on Interstate Law [2d ed.], 226; Moore on Extraterritorial Crime, 68, 69; Story on Conflict of Laws [8th ed.], §§ 18, 22, 29, 30, 620.)

Miller, J. This action is brought by a citizen of the state under section 4 of the Labor Law to procure the cancellation of a contract entered into between the city

of New York and the defendant Thompson-Starrett Company for the construction of the new municipal building in the borough of Manhattan and to restrain the defend-, ant Prendergast from making any payments thereon. The defendant contractor sublet the granite work to the Mount Waldo Granite Works, a Maine corporation. The work of quarrying, cutting, dressing and trimming the granite was done in the state of Maine and the workmen were paid $3 per day, the prevailing rate of wages there. The prevailing rate of wages for the same class of work in the city of New York is $4.50 per day. Wherefore, it is charged that section 3 of the Labor Law was violated. The contractor and the sub-contractor both agreed to comply with the provisions of the Labor Law.

This is not a taxpayer's action, or an action by the city for breach of contract. The only complaint which the plaintiff as a citizen can make is that said section 3 has been violated, and we are concerned on this appeal only with the construction of that section.

There has been no material change in the statute, as far as the question now before us is concerned, since the decision in *Bohnen* v. *Metz* (126 App. Div. 807; affirmed on opinion below, 193 N. Y. 676), and we are of the opinion that that case is decisive of this. In that case the contractor with the city ordered doors, windows and woodwork to be specially manufactured. The manufacturer employed his workmen more than eight hours a day and did not pay them the prevailing rate of wages in the city of New York. There are two possible distinctions between that case and this: 1, in that case the manufacturer did not fasten the woodwork to the building and, 2, his work was all done in this state.

The second distinction certainly does not help the appellant. Apart from the rule that an intention will not be inferred from general language of an act to give it extra-territorial effect, there is internal evidence, which I shall not stop to point out, to show that the act was not

designed to increase the wages paid to workmen in Maine; and the learned counsel for the appellant concedes that the legislature had no such benevolent purpose. He says in effect that the purpose was to do by indirection what it was supposed could not be done directly, to cause the work to be done where the public building or work in its completed form was located, by the expedient of requiring the prevailing rate of wages there to be paid all workmen on the work itself and on all materials entering into it, irrespective of where the material might be prepared. That may have been in the minds of those interested in securing the legislation, but we cannot ascribe such a purpose to the legislature. It is to be observed that we are not now considering a question of legislative power, but only one of legislative intent. If this statute was intended to take work from the stonecutters of Maine, it was also intended to do the like by workmen in different parts of this state where wages and the cost of living are lower than in others. It is not to be supposed that it was intended by such indirection to discriminate in favor of the workmen of a particular section. Certainly, nothing short of express words to that effect would justify us in ascribing such a purpose to the legislature.

The first distinction hereinbefore stated between this and the *Bohnen* case is the one relied upon by the appellant, but it is without substance. If the sub-contractor in this case had merely cut, trimmed, dressed and fashioned the granite blocks to order, the cases would be precisely alike. Calling one a manufacturer and the other a sub-contractor does not create a substantial difference, nor does the fact that the sub-contractor, in addition to supplying the granite blocks, did the necessary trimming and altering at the job and set them in the walls of the building. There is no question but that the prevailing rate of wages in New York city was paid for the latter work. A single sentence of the statute, literally con-

strued, would require the prevailing rate of wages at the job to be paid the workmen on all materials entering into it down to the nails, screws and bolts.  As the late Mr. Justice HOUGHTON well observed in the *Bohnen* case, it "would follow the iron beams necessary for the building to the mines, the woodwork to the logging camp, and the stone to the quarry." The appellant, evidently appreciating the absurdity of a literal construction, adopts a middle course and does not complain of the wages paid the stonecutters who cut the broken rock into rough blocks; but if his construction is correct, they and even the quarrymen, if there be a prevailing rate of wages for quarrymen in New York city, are included in the requirement.  There is no middle ground between a literal construction leading to the result just indicated and a reasonable construction to accomplish the purpose evidently intended.

The distinction sought to be made between a contract of purchase of materials manufactured to order and one of sub-letting of the like work is a distinction in name only, and is not made by the statute, the language of which is, "contractor, sub-contractor or other person." The practical question would be the same if there was no contract of purchase or of sub-letting, and if the principal contractor was himself the manufacturer, or, as in this case, the owner of the granite quarry.

Under the amendment to section 1 of article 12 of the Constitution, adopted by the People in 1905, the legislature undertook to regulate the wages and hours of work, and provide for the welfare of persons employed by the state, municipal corporations or commissions.  If the intention was, as the literal reading of a single sentence of the statute indicates, to require the prevailing rate of wages at the job to be paid on all materials entering into public work, no contractor could afford to undertake such work at the hazard of a forfeiture of his contract for what he would be wholly unable to prevent.  Moreover, this

case is a fair illustration of the result of such a construction to the municipalities of the state. The sub-contract price for the granite work alone was two million dollars. If New York city wages had to be paid in the manufacture and preparation of all materials, no matter where the work might be done, the result upon the vast undertakings of a city like New York would be almost prohibitive. If the act is to be thus construed, it should have been entitled "An act to discourage the undertaking of public works." Of course, as counsel for the appellant well says, we have nothing to do with the question of policy. If the legislature, in the exercise of its constitutional power, has so provided, our duty is to give the act effect as it is written. But, in determining the intention of the legislature, we are not bound to close our eyes to the consequences of the construction contended for. We, therefore, look for something in the context to show that the legislature did undertake intelligently to accomplish the purpose which they must be supposed to have had in mind, *i. e.*, to provide for the welfare of workmen in this state, and we find it in the sentence next succeeding the one, the literal construction of which supports the appellant's contention. That sentence is: "Each such contract hereafter made shall contain a stipulation that each such laborer, workman or mechanic, employed by such contractor, sub-contractor or other person on, about or upon such public work, shall receive such wages herein provided for." The significant words are those quoted in the opinion in the *Bohnen* case, "on, about or upon such public work," which were obviously used in the same sense as, and, therefore, qualify the meaning of, the words in the preceding sentence, "upon all such public works, or upon any material to be used upon or in connection therewith." Upon reading that sentence in the light of the explanation just suggested, a reason for its broad language at once occurs to the mind, *i. e.*, to prevent evasions and to make it impossible for a con-

tractor to escape paying the prevailing rate of wages to any of the workman employed on the work, as, for example, by the intervention of sub-contractors or materialmen, who might undertake to do the necessary work on the job of preparing and fitting all materials so as to be put in place. At any rate, it is plain that the broad language of the one sentence is qualified by the more restricted language of the succeeding sentence. It would be unwise in this case to undertake a precise definition of the phrase " on, about or upon such public work " as used in the statute. It is sufficient to hold that the quarrymen and stonecutters in Maine were not employed " on, about or upon " the public work of constructing the municipal building in the city of New York within the intent of the act, and we reach that conclusion regardless of whether they were employed by the principal contractor, by a sub-contractor or by another person who might have contracted to furnish the granite blocks cut, dressed and trimmed to order.

The judgment should be affirmed, with costs.

CUDDEBACK, J. (concurring in result). Section 3 of the Labor Law (Cons. Laws, ch. 31) regulates the employment of laborers, workmen and mechanics on public works. The statute provides that eight hours shall constitute a legal day's labor on all such public works, and provides further as follows:

" The wages to be paid for a legal day's work as hereinbefore defined to all classes of such laborers, workmen or mechanics *upon all such public works, or upon any material to be used upon or in connection therewith*, shall not be less than the prevailing rate for a day's work in the same trade or occupation in the locality within the state where such public work on, about or in connection with which such labor is performed in its final or completed form is to be situated, erected or used. Each such contract hereafter made shall contain a stipulation that each

such laborer, workman or mechanic, employed by such contractor, sub-contractor or other person *on, about or upon such public work*, shall receive such wages herein provided for. Each contract for such public work hereafter made shall contain a provision that the same shall be void and of no effect unless the person or corporation making or performing the same shall *comply with the provisions of this section.*"

The prevailing opinion holds that the first sentence of these clauses quoted from the statute is limited by the second sentence to workmen employed " on, about or upon such public work " and not to workmen employed elsewhere upon material that may enter into the work.

I think the last sentence of the quotation requires that all the provisions of the first sentence shall be observed.

As construed in the prevailing opinion the contractor for a public building might bring to the place where the building is to stand all the material necessary for its construction in a highly finished state, and the statute would apply to the bare assembling of the material in the completed structure. For the labor performed elsewhere in the production or shaping of such material the contractor might pay wages as he chose.

This construction of the statute nullifies its provisions to a very great extent, and furthermore it is unnecessary.

It is not necessary in reviewing the determination of the Appellate Division to lay down any general rule as to the application of the Labor Law to labor on material used in public works. It is better to determine each case by itself, on the facts which it presents.

I, therefore, recommend that the judgment appealed from be affirmed, without any attempt made to anticipate the court's decision on a different state of facts.

CULLEN, Ch. J., GRAY, WILLARD BARTLETT and CHASE, JJ., concur; CUDDEBACK (in opinion) and HOGAN, JJ., concur in result.

Judgment affirmed.