In the Matter of the Estate of FANNIE MAY, Deceased. ALICE M. GREENBERG et al., Respondents; SAM MAY et al., Appellants.

Third Department, November 17, 1952.

*Morton L. Kimmelman* and *Matthew H. Bowcock* for appellants.

*Helen M. Clark* for respondents.

BREWSTER, J. Respondent petitioner has been granted letters of administration upon the estate of the deceased, her mother, over the objections of the appellants, her father, brothers, and a sister, upon a holding that her father was not a lawful surviving husband of deceased in that their intermarriage in the State of Rhode Island on January 21, 1913, while valid under the laws of that jurisdiction may not be recognized when brought into question here. Deceased was appellant father's half niece. Under our statute they were forbidden to intermarry and penal consequences were provided for its violation. (Domestic Relations Law, § 5; Penal Law, § 1110; *Audley* v. *Audley,* 196 App. Div. 103.) The sole issue is whether such marriage of an uncle and his niece which is pronounced incestuous and void by our statute is to be so regarded when validly contracted in another State.

Relevant provisions of the afore-cited statutes are:

Domestic Relations Law, Article 2 — Marriages. " § 5. Incestuous and void marriages. A marriage is incestuous and void whether the relatives are legitimate or illegitimate between either:   *   *   *   3. An uncle and niece or an aunt and nephew. If a marriage prohibited by the foregoing provisions of this section be solemnized it shall be void, and the parties thereto shall each be fined not less than fifty nor more than one hundred dollars and may, in the discretion of the court in addition to said fine, be imprisoned for a term not exceeding six months."

Penal Law, Article 102 — Incest. " § 1110. When persons, within the degrees of consanguinity, within which marriages are declared by law to be incestuous and void, intermarry   *   *   *   with each other, each of them is punishable by imprisonment for not more than ten years."

The question is as to what recognition our law is to give to the civil status which was acquired by deceased and the appellant upon their marriage in Rhode Island, validly contracted there under the laws of that jurisdiction. As to " its validity in law " a marriage is deemed a civil contract (Domestic Relations Law, § 10) despite its many differences from an ordinary contract, and the general rule, too long and widely established to need much citation of authority, is that when contracted in another State or country, if valid there under the law of that place, it is valid everywhere. The rule is *jus gentium*. (*Van Voorhis* v. *Brintnall*, 86 N. Y. 18.) The only exceptions to this rule which obtain in our jurisdiction and which merit consideration in the instant case are: (1) cases coming within the inhibitions of *natural law* as it is recognized by countries adhering to the concepts of Christian culture and its antecedents, e.g., those which are polygamous or so incestuous in degree as to have been regarded with abhorrence since time immemorial, and (2) those prohibited by such of our positive laws as have extraterritorial force and bind the violator when he comes within or returns to our jurisdiction. (*Van Voorhis* v. *Brintnall, supra; Thorp* v. *Thorp*, 90 N. Y. 602; *Cunningham* v. *Cunningham,* 206 N. Y. 341, 348.)

The blood relationship of an uncle and a niece is not sufficiently close to render their marital union so repugnant to our concept of the *natural law* as to bring it within the first class of exceptions aforestated. It was never so regarded either anciently or at common law. (*Wightman* v. *Wightman,* 4 Johns. Ch. 343, 348–350; *Stevenson* v. *Gray,* 56 Ky. 193.) Indeed, it is still lawful in many jurisdictions in our country and abroad throughout Christendom. It was not interdicted by Levitical or Talmudical law and is presently sanctioned by the Jewish faith and doctrine. It was not forbidden in our own State until the enactment of our present statute in 1893 (L. 1893, ch. 601), since which time, when lawfully contracted in a foreign jurisdiction it has been authoritatively recognized here. (*Campione* v. *Campione,* 201 Misc. 590; 1933 Atty. Gen. 83, 84; 1951 Atty. Gen. [Pamphlet], p. 78.)

Next, then, is there anything in the prohibitory statute (Domestic Relations Law, § 5) which gives it any extraterritorial force? Manifestly its highly criminal provisions as well as those of the Penal Law (*supra*) are not enforcible when the forbidden act is committed out of the State and he who thus acted comes or returns here. (*People* v. *Mosher,* 2 Parker Cr.

Rep. 195; see, also, *Sims* v. *Sims,* 75 N. Y. 466.) To so extend it as to enforce its other provisions would entail punishment equally or more severe than those provided for the crime, at least in some cases of which the instant one is an example. Here the marital union subsisted for over thirty-two years and until sundered by the death of the wife, with the issue of six children, adults now surviving. Judge DANFORTH's comments in the *Van Voorhis* case (*supra,* p. 32) are apt, viz.: "Whether a man is punished by fine and imprisonment, or by the disgrace of himself and the woman he married — the bastardy of his children — is a difference in degree only. The severer punishment is in the last alternative. Can the court imply the power to inflict it? Can it exist unless given by express language? I think not." It is well settled that for a statute to so operate as to give any of its provisions the extraterritorial force which, in effect, has been accorded by the decree in question, an expressed legislative design therefor is necessary. (*Van Voorhis* v. *Brintnall, supra,* 28–38; *Ewen* v. *Thompson-Starrett Co.,* 208 N. Y. 245, 247; 50 Am. Jur., Statutes, §§ 485–487.) Such we do not find expressed, and its omission is in consonance with a public policy which marks its significance in view of the consequences which would follow if it were to be supplied by implication, viz.: the abrogation of vested rights and the disruption and confusion of family order and establishment, including the bastardizing of children. (*Putnam* v. *Putnam,* 8 Pick. [Mass.] 433; *Medway* v. *Needham,* 16 Mass. 157.)

The decree should be reversed and the matter remitted for an award of the letters to appellant father.

Decree reversed, with costs, and matter remitted for a grant of letters of administration upon the estate of deceased to appellant father.

FOSTER, P. J., BERGAN and COON, JJ., concur; HEFFERNAN, J., taking no part.

Decree reversed on the law, with costs, and the matter remitted to grant letters of administration upon the estate of deceased to appellant father. The facts implicit in the decision are not disputed and hence we affirm them.