Nguyen v. Holder

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

————————————

August Term, 2013

(Submitted: January 16, 2014     Decided: February 19, 2014)

Docket No. 13-605-ag

————————————

HUYEN V. NGUYEN,

*Petitioner,*

—v.—

ERIC H. HOLDER, JR.,
United States Attorney General,

*Respondent.*

————————————

B e f o r e:

KATZMANN, *Chief Judge*, WESLEY and CHIN, *Circuit Judges*.

————————————

Petition for review of a decision of the Board of Immigration Appeals, which affirmed an immigration judge's order of removal and denial of a petition to remove the conditions on the petitioner's residency. We conclude that although the determination that the petitioner and her husband were related as niece and

husband by "half-blood" is supported by substantial evidence, the question of whether such relationships are void for incest under New York's Domestic Relations Law warrants certification to the New York Court of Appeals.

DECISION RESERVED AND QUESTION CERTIFIED.

————————

Michael E. Marszalkowski, Buffalo, NY, *for Petitioner*.

Michael C. Heyse, Trial Attorney, Stuart F. Delery, Assistant Attorney General, and Mary Jane Candaux, Assistant Director, Civil Division, United States Department of Justice, Washington, D.C., *for Respondent*.

————————

KATZMANN, *Chief Judge*:

Petitioner Huyen V. Nguyen ("Nguyen"), a citizen of Vietnam, seeks review of an order of the Board of Immigration Appeals ("BIA") dismissing her appeal from a decision of the Immigration Judge ("IJ"), which ordered her removed and denied her petition to remove conditions placed upon her residency in the United States. *See In re Huyen V. Nguyen*, No. A076-127-741 (B.I.A. Jan. 25, 2013), *aff'g* No. A076 127 741 (Immig. Ct. Buffalo, NY Aug. 31, 2010).

Nguyen was admitted as a conditional permanent resident on August 22, 2000, based on her marriage to United States citizen Vu Truong ("Truong"). On July 10, 2002, Nguyen jointly filed a petition with her husband to remove the

2

conditions on her residency. On December 12, 2007, the United States Customs and Immigration Service denied the petition after finding that Nguyen was Truong's half-niece. The agency concluded that Nguyen's marriage to her citizen husband was incestuous and therefore void. Consequently, Nguyen was charged as removable from the United States on various grounds, each of which was related to the determination that her marriage was void and her conditional residency in the United States was improper. Nguyen denied the charges and proceeded to a hearing before the IJ regarding her removability.

Following a hearing, the IJ concluded that the government's evidence showing that Nguyen was the half-niece of her husband was credible. The IJ further held that a New York statute voiding as incestuous a marriage between "an uncle and a niece" also reaches "any marriage in which a parent of the niece is a half-sibling of the uncle." Admin. Rec. at 66 (citing *Audley v. Audley*, 187 N.Y.S. 652 (N.Y. App. Div. 1921) (internal quotation marks omitted)). Nguyen appealed to the BIA. The BIA affirmed the IJ's finding that record evidence, which included both a birth certificate and Truong's sister's immigration documents indicating that Nguyen's grandmother was also Truong's mother, was sufficient to show that Nguyen and Truong were related as half-niece and half-uncle. The

3

BIA also affirmed the IJ's conclusion that "a marriage between a niece and a half-uncle is invalid under New York law." Admin Rec. at 4 (citing *In re May's Estate*, 305 N.Y. 486 (1953)).

We have reviewed both the IJ's and the BIA's opinions "for the sake of completeness," *Zaman v. Mukasey*, 514 F.3d 233, 237 (2d Cir. 2008) (internal quotation marks omitted), reviewing the factual findings for "substantial evidence" and questions of law *de novo*. *See* 8 U.S.C. § 1252(b)(4). A factual finding will be based on substantial evidence where it is "supported by reasonable, substantial and probative evidence in the record." *Yanqin Weng v. Holder*, 562 F.3d 510, 513 (2d Cir. 2009) (quoting *Lin Zhong v. U.S. Dep't of Justice*, 480 F.3d 104, 116 (2d Cir. 2007)).

Applying those standards here, we conclude that the agency's factual finding that Nguyen's maternal grandmother, Nguyen Thi Ba, is also the mother of the petitioner's husband, Truong (and thus that Nguyen and her husband are half-blooded niece and uncle) is supported by substantial evidence. The agency's determination was reasonably based on a review of Nguyen's mother's birth certificate, as well as a document in the immigration file of Truong's sister, which listed Nguyen's mother as her half-sister. Where, as here, the agency's inference is

"tethered to the evidentiary record," *Siewe v. Gonzalez*, 480 F.3d 160, 169 (2d Cir. 2007), we will defer to its finding even if there is "support for a contrary inference," *id.*

While Nguyen contends that testimony disputing the relationship between Nguyen's mother and Nguyen's husband was more credible than the evidence on which the agency relied, we afford "particular deference" to the agency's credibility determinations where they are "based on analysis of testimony." *Zhong*, 480 F.3d at 116-17. Having reviewed the administrative record, we are not compelled to conclude that the IJ erred in deeming Nguyen and her husband's testimony less credible than the evidence on which it relied in finding the two related as half-blooded niece and uncle. Accordingly, we affirm the IJ's factual determination that Nguyen and her husband are related as half-blooded niece and uncle.

But that is not the end of the matter. We must also review *de novo* the agency's application of New York law to the fact that the petitioner and her husband are related as niece and uncle "of . . . the half blood," to borrow a phrase used by New York's Domestic Relations Law. *See* N.Y. Dom. Rel. Law § 5(2).

5

The BIA concluded that, as a matter of New York statutory law, marriages between half-blooded nieces and uncles are, like the full-blooded equivalent relationship between niece and uncle, void as incestuous.

In their briefing before this Court, the parties do not dispute that New York law applies to the question of whether Nguyen's marriage is void for incest. However, they part ways on the proper interpretation to be given to New York's statute defining and proscribing "incestuous" marriages. The applicable statute is section 5 of New York's Domestic Relations Law, which provides, in pertinent part, as follows:

> A marriage is incestuous and void whether the relatives are
> legitimate or illegitimate between either:
>     1. An ancestor and a descendant;
>     2. A brother and sister of either the whole or the half blood;
>     3. An uncle and niece or an aunt and nephew.

N.Y. Dom. Rel. Law § 5.

Curiously, subsection (2), which regulates marriages between brothers and sisters, expressly applies to "half blood" relationships, whereas subsection (3), which is the provision applied to the petitioner and her husband, omits the relevant language. The question presented, therefore, is whether subsection (3) should be read, like subsection (2), to also reach an uncle and niece "of either the

6

whole or the half blood." Our resolution of this question will be dispositive of the petition before us: an affirmative answer—that is, that the statute also reaches marriages between nieces and uncles of the half-blood—would require denial of the petition, while a negative answer would, at the least, be grounds for termination of the removal proceeding.

We note that two cases from New York's intermediate appellate courts hold that marriages between half-nieces and half-uncles are void for incest notwithstanding the omission of the "whole or the half blood" language from subsection (3) of the statute. The most influential among them is *Audley v. Audley*, 187 N.Y.S. 652 (N.Y. App. Div. 1921), in which the Appellate Division first held that subsection (3) reaches relationships "between an uncle and a niece or an aunt and nephew without regard to the percentage of their blood relationship," *id.* at 654. The second case, also from the Appellate Division, is *In re May's Estate*, 117 N.Y.S.2d 345 (N.Y. App. Div. 1952), *aff'd*, 305 N.Y. 486 (1953), which cited, without further analysis, the rule set out in *Audley* and held that a half-niece and half-uncle "were forbidden to intermarry" under section 5 of New York's Domestic Relations Law, 117 N.Y.S.2d at 346.

The parties have not identified, nor have we discovered, any reported decision of the New York Court of Appeals that squarely holds that section 5(3) of New York's Domestic Relations Law prohibits marriages between half-blooded nieces and uncles. Although the BIA cited the New York Court of Appeals's decision in *In re May's Estate* for the "holding that a marriage between a half uncle and his niece is incestuous and void," Admin. Rec. at 4, we find no clear affirmance of the *Audley* rule in that case. By contrast, the one case from the Court of Appeals to address the question of statutory interpretation before us is *In re Simms' Estate*, 26 N.Y.2d 163 (1970), which calls into question the gloss given to New York's incest statute in *Audley*. *Id.* at 166.

In *Simms*, the Court of Appeals did not decide the question of statutory interpretation that is before us here, *see id.* at 167, but it nevertheless cast doubt upon the analysis given by the Appellate Division in *Audley*. The *Simms* opinion observed that the omission of the phrase "whole or half blood" from the applicable statutory language was troublesome given the inclusion of that language in the statute's immediately preceding interdiction of marriages between brothers and sisters, and further noted that "it seems reasonable to think that if the Legislature intended to prohibit marriages between uncles, nieces,

8

aunts and nephews whose parents were related to the contracting party only by the half blood, it would have used similar language." *Id.* at 166. The Court of Appeals further opined that

> [i]f the Legislature had intended that its interdiction on this type of marriage should extend down to the rather more remote relationship of half blood between uncle and niece, it could have made suitable provision. Its failure to do so in the light of its explicit language relating to brothers and sisters suggests it may not have intended to carry the interdiction this far.

*Id.* While the Court of Appeals's analysis in *Simms* can fairly be called dicta, it nonetheless gives us pause in considering the continued vitality of *Audley*'s interpretation of subsection (3).

In these circumstances, we are faced with an outcome-determinative question in a case in which "the New York Court of Appeals has not squarely addressed an issue and other decisions by New York courts are insufficient to predict how the Court of Appeals would resolve it." *Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 42 (2d Cir. 2010). On the briefing before us, we are unable to conclude that either the plain language of the statute or its legislative history readily furnishes an answer, *see id.*, and are therefore not "confident that we can correctly resolve the matter at issue ourselves," *Licci ex rel. Licci v. Lebanese*

9

*Canadian Bank, SAL*, 673 F.3d 50, 74 (2d Cir. 2012). We therefore consider whether to certify the question of New York law that is before us to the New York Court of Appeals.

Before exercising our discretion to certify the question before us to the New York Court of Appeals, we must satisfy ourselves that the question meets the following criteria: 1) it must be determinative of this petition; 2) it must not have been squarely addressed by the New York Court of Appeals and the decisions of other New York courts must leave us unable to predict how the Court of Appeals would rule; and 3) the question must be important to the state and its resolution must require value-laden judgments or public policy choices. *See In re Thelen LLP*, 736 F.3d 213, 224 (2d Cir. 2013); *10 Ellicott Square Court Corp. v. Mountain Valley Indem. Co.*, 634 F.3d 112, 125-26 (2d Cir. 2011). In light of our foregoing discussion, we conclude that the question before us satisfies the first two considerations. We therefore turn to the last consideration: the importance of the question to the state.

We are mindful that in exercising our discretion to certify a question to the Court of Appeals we must assure that "the question on which we certify [is] of importance to the state, and its resolution must require value judgments and

important public policy choices that the New York Court of Appeals is better situated than we to make." *Licci*, 673 F.3d at 74 (internal quotation marks and alterations omitted). In considering the importance of the question before us, we observe that a thread running through New York's case law regarding the degrees of consanguinity within which a marriage is incestuous is the rule that marriages between individuals whose relationship is more remote than brother and sister must be deemed incestuous by express legislation. *See generally Wightman v. Wightman*, 4 Johns. Ch. 343 (N.Y. Ch. 1820). Following the passage of New York's Domestic Relations Law, lower courts in the late nineteenth and early twentieth century read "half-blood" into the legislature's proscription of niece-uncle marriages in part because they concluded that such marriages "would certainly shock the sentiment of any enlightened community," *Campbell v. Crampton*, 2 F. 417, 428 (C.C. N.D.N.Y. 1880), and that an equivalence between whole- and half-blood relationships was a matter of "public policy," *Audley*, 187 N.Y.S. at 654. *See also Audley*, 187 N.Y.S. at 654 (describing the prohibition of incest, including marriages between nieces and uncles of any "percentage" of

blood relationship, as being "for the benefit of the public health and the perpetuation of the human race").

We express no view on whether public policy, either now or at the time the statute was passed, directs that either a narrower or more expansive gloss should be given to the definition of incestuous niece-uncle relationships. Clearer guidance from the Court of Appeals is, however, in order. *See Tire Eng'g & Distrib. L.L.C. v. Bank of China Ltd.*, Nos. 13-1519-cv, 13-2535-cv(L), 13-2639-cv(con), --- F.3d ---, 2014 WL 114285, at *5-6 (2d Cir. Jan. 14, 2014) (noting that where a rule reflects a "judicially created doctrine that reflects policy considerations over time" on which courts, the legislature, and others may have come to rely, certification is "particularly compelling"). We therefore conclude that the final factor counsels in favor of certification.

For the foregoing reasons, and pursuant to New York Court of Appeals Rule 500.27 and Local Rule 27.2 of this Court, we certify the following question to the New York Court of Appeals:

> Does section 5(3) of New York's Domestic Relations Law void as incestuous a marriage between an uncle and niece "of the half blood" (that is, where the husband is the half-brother of the wife's mother)?

Consistent with our usual practice, "we do not intend to limit the scope of the Court of Appeals' analysis through the formulation of our question, and we invite the Court of Appeals to expand upon or alter this question as it should deem appropriate." *10 Ellicott Square*, 634 F.3d at 126.

It is hereby **ORDERED** that the Clerk of this Court transmit to the Clerk of the New York Court of Appeals this opinion as our certificate, together with a complete set of the briefs and the administrative record filed in this Court. The parties will equally bear any fees and costs that may be imposed by the New York Court of Appeals in connection with this certification. This panel will resume its consideration of this petition after the New York Court of Appeals disposes of this certification either by providing guidance or declining certification.