[21 NE3d 1023, 997 NYS2d 362]

HUYEN V. NGUYEN, Petitioner, v ERIC H. HOLDER, JR., United States Attorney General, Respondent.

Argued September 9, 2014; decided October 28, 2014

**APPEARANCES OF COUNSEL**

*Michael E. Marszalkowski, P.C.*, Buffalo (*Michael E. Marszalkowski* of counsel), for petitioner.

*United States Department of Justice, Office of Immigration Litigation*, Washington, D.C. (*Michael C. Heyse, Stuart F. Delery* and *Mary Jane Candaux* of counsel), for respondent.

**OPINION OF THE COURT**

Following certification of a question by the United States Court of Appeals for the Second Circuit and acceptance of the question by this Court pursuant to section 500.27 of the Rules of Practice of the Court of Appeals (22 NYCRR 500.27) (22 NY3d 1150 [2014]), and after hearing argument by counsel for the parties and consideration of the briefs and the record submitted, certified question answered in the negative. A marriage where a husband is the half brother of the wife's mother is not void as incestuous under Domestic Relations Law § 5 (3).

Concur: Chief Judge LIPPMAN and Judges GRAFFEO, READ, SMITH, PIGOTT and RIVERA. Judge SMITH concurs in an opinion in which Chief Judge LIPPMAN and Judge RIVERA concur. Judge GRAFFEO concurs in an opinion in which Judges READ and PIGOTT concur. Taking no part: Judge ABDUS-SALAAM.

SMITH, J. (concurring). The United States Court of Appeals for the Second Circuit has asked us whether a marriage between a half uncle and half niece is void as incestuous under Domestic Relations Law § 5 (3). I agree, for the following reasons, that we should answer that it is not.

I

Petitioner is a citizen of Vietnam. In January of 2000, at the age of 19, she was married in Rochester, New York to Vu Truong, who was 24 and a naturalized American citizen. Later that year, petitioner was granted the status of a conditional permanent resident in the United States on the basis of her marriage.

According to the factual findings of the United States Board of Immigration Appeals, which the Second Circuit accepted as supported by substantial evidence, petitioner's mother was born in 1950 to a woman named Nguyen Thi Ba. Twenty-five years later, Nguyen Thi Ba gave birth to Vu Truong. Petitioner's mother and Vu Truong had different fathers. Thus petitioner's mother was Vu Truong's half sister, and petitioner is his half niece.

An immigration judge ordered petitioner removed from the country on the ground that her purported marriage to an American citizen was void, and the Board of Immigration Appeals affirmed. Petitioner sought review of that ruling in the Second

Circuit, and the Second Circuit certified the following question to us:

> "Does section 5(3) of New York's Domestic Relations Law void as incestuous a marriage between an uncle and niece 'of the half blood' (that is, where the husband is the half-brother of the wife's mother)?" (743 F3d 311, 317 [2014].)

## II

Section 5 of the Domestic Relations Law reads in full:

> "A marriage is incestuous and void whether the relatives are legitimate or illegitimate between either:
>
> "1. An ancestor and a descendant;
>
> "2. A brother and sister of either the whole or the half blood;
>
> "3. An uncle and niece or an aunt and nephew.
>
> "If a marriage prohibited by the foregoing provisions of this section be solemnized it shall be void, and the parties thereto shall each be fined not less than fifty nor more than one hundred dollars and may, in the discretion of the court in addition to said fine, be imprisoned for a term not exceeding six months. Any person who shall knowingly and wilfully solemnize such marriage, or procure or aid in the solemnization of the same, shall be deemed guilty of a misdemeanor and shall be fined or imprisoned in like manner."

We must decide whether subdivision (3) of this statute should be read to include a half uncle and half niece (or half aunt and half nephew). There is something to be said on both sides of this question.

In common speech, the half brother of one's mother or father would usually be referred to as an uncle, and the daughter of one's half sister or half brother would usually be referred to as a niece; the terms "half uncle" and "half niece" are not in common use. Thus it is perfectly plausible to read subdivision (3) as including half blood relatives. On the other hand, the authors of Domestic Relations Law § 5 (2), when prohibiting brother-sister marriages, went to the trouble of adding the words "of either the whole or the half blood." No similar words appear in section

5 (3), arguably implying that the legislature did not intend the uncle-niece prohibition to reach so far. The statute is ambiguous. Perhaps the likeliest inference is that the authors of section 5 (3) gave no particular thought to the half uncle/half niece question, since if they had they could easily have clarified it either way.

Nor does New York case law point to any clear conclusion. In *Audley v Audley* (196 App Div 103 [1st Dept 1921]), the Appellate Division held a marriage between a half uncle and a half niece to be void under section 5 (3). But in *Matter of Simms* (26 NY2d 163, 166 [1970]) we, without deciding the question, expressed doubt about *Audley*'s conclusion:

> "If the Legislature had intended that its interdiction on this type of marriage should extend down to the rather more remote relationship of half blood between uncle and niece, it could have made suitable provision. Its failure to do so in the light of its explicit language relating to brothers and sisters suggests it may not have intended to carry the interdiction this far."

Thus there is a holding from the Appellate Division pointing in one direction, and dictum from this Court pointing in the other. Neither is binding on us. I would resolve the issue by considering the nature and the purpose of the statute we interpret.

Domestic Relations Law § 5 is in part a criminal statute: it says that the participants in a prohibited marriage may be fined, and may be imprisoned for up to six months. Penal Law § 255.25, using language very similar to that of Domestic Relations Law § 5 ("ancestor, descendant, brother or sister of either the whole or the half blood, uncle, aunt, nephew or niece"), makes entry into a prohibited marriage a class E felony. Where a criminal statute is ambiguous, courts will normally prefer the more lenient interpretation, and the courts of several other states have followed that rule in interpreting their criminal laws not to prohibit relationships between uncles and nieces, or aunts and nephews, of the half blood (*State v Craig*, 254 Kan 575, 580, 867 P2d 1013, 1016 [1994]; *People v Baker*, 69 Cal 2d 44, 50, 442 P2d 675, 678 [1968]; *State v Bartley*, 304 Mo 58, 62, 263 SW 95, 96 [1924]). The government says that these cases are distinguishable because they were criminal cases; but we are here interpreting a statute that applies in both civil and criminal cases, and it would be strange at best to hold that the

same words in the same statute mean different things in different kinds of litigation.

I also conclude that the apparent purpose of section 5 (3) supports a reading that excludes half uncle/half niece marriages from its scope. Section 5 as a whole may be thought of as serving two purposes: it reflects long-held and deeply-rooted values, and it is also concerned with preventing genetic diseases and defects. Section 5 (1) and (2), prohibiting primarily parent-child and brother-sister marriages, are grounded in the almost universal horror with which such marriages are viewed—a horror perhaps attributable to the destructive effect on normal family life that would follow if people viewed their parents, children, brothers and sisters as potential sexual partners. As the Appellate Division explained in *Matter of May* (280 App Div 647, 649 [3d Dept 1952], *affd* 305 NY 486 [1953]), these relationships are "so incestuous in degree as to have been regarded with abhorrence since time immemorial."

There is no comparably strong objection to uncle-niece marriages. Indeed, until 1893 marriages between uncle and niece or aunt and nephew, of the whole or half blood, were lawful in New York (*see* L 1893, ch 601; *Audley*, 196 App Div at 104). And 60 years after the prohibition was enacted we affirmed, in *May*, a judgment recognizing as valid a marriage between a half uncle and half niece that was entered into in Rhode Island and permitted by Rhode Island law. It seems from the Appellate Division's reasoning in *May* that the result would have been the same even if a full uncle and full niece had been involved. Thus Domestic Relations Law § 5 (3) has not been viewed as expressing strong condemnation of uncle-niece and aunt-nephew relationships.

The second purpose of section 5's prohibition of incest is to prevent the increased risk of genetic disorders generally believed to result from "inbreeding." (It may be no coincidence that the broadening of the incest statute in 1893 was roughly contemporaneous with the development of the modern science of genetics in the late nineteenth century.) We are not geneticists, and the record and the briefs in this case do not contain any scientific analysis; but neither party disputes the intuitively correct-seeming conclusion that the genetic risk in a half uncle, half niece relationship is half what it would be if the parties were related by the full blood. Indeed, both parties acknowledged at oral argument that the risk in a half uncle/half niece marriage is comparable to the risk in a marriage of first cousins. First

cousins are allowed to marry in New York, and I conclude that it was not the legislature's purpose to avert the similar, relatively small, genetic risk inherent in relationships like this one.

GRAFFEO, J. (concurring). Under our long-standing principles of statutory construction, I conclude that a marriage between a half uncle and half niece, or a half aunt and half nephew, is permissible in New York based on the structure of Domestic Relations Law § 5. As this Court observed in *Matter of Simms* (26 NY2d 163 [1970]), the legislature included language in subdivision (2) of this statute that prohibits a marriage between a brother and sister of "the half blood," but there is no comparable clause in subdivision (3) voiding marriages between uncles and nieces or aunts and nephews. When the legislature includes a condition in one provision but excludes it from another within the same statute, there arises an "irrefutable inference" that the omission was intentional (*Matter of Raynor v Landmark Chrysler*, 18 NY3d 48, 56 [2011] [internal quotation marks and citation omitted]; *see also* McKinney's Cons Laws of NY, Book 1, Statutes § 240). Hence, the contrast in the plain language of Domestic Relations Law § 5 (2) and (3) compels the conclusion that marriages between half siblings are outlawed but marriages involving half uncles and half nieces or half aunts and half nephews are permissible.

Nevertheless, I write separately to emphasize that the legislature may see fit to revisit this provision. The record before us does not address the question of genetic ramifications for the children of these unions. Some of my colleagues assert that marriages between half uncles and half nieces, or half aunts and half nephews, are no different than marriages between first cousins. Perhaps there is no genetic basis for precluding such unions, but this Court was not presented with any scientific evidence upon which to draw an informed conclusion on this point.

From a public policy perspective, there may be other important concerns. Such relationships could implicate one of the purposes underlying incest laws, i.e., "maintaining the stability of the family hierarchy by protecting young family members from exploitation by older family members in positions of authority, and by reducing competition and jealous friction among family members" (*Benton v State*, 265 Ga 648, 650, 461 SE2d 202, 205 [1995, Sears, J., concurring]). Similar intrafamilial concerns may arise regardless of whether the uncle or aunt in the marriage is of whole or half blood in relation to the niece

or nephew. The issue of unequal stature in a family or cultural structure may not be implicated in this case but certainly could exist in other contexts, and a number of states have retained statutory prohibitions involving such marriages.* These considerations are more appropriately evaluated in the legislative process.

---

\* *See* Ala Code § 13A-13-3 (a) (4); Alaska Stat Ann §§ 11.41.450 (a) (3); 25.05.021 (2); Colo Rev Stat Ann § 14-2-110 (1) (c); 750 Ill Comp Stat Ann 5/212 (a) (3); Ky Rev Stat Ann § 530.020 (1); La Civ Code Ann art 90 (A) (2); Minn Stat Ann § 517.03 (1) (3); Mont Code Ann § 40-1-401 (1) (c); NJ Stat Ann § 37:1-1 (a), (b); ND Cent Code Ann § 14-03-03 (3), (4); Or Rev Stat Ann § 106.020 (2); Tex Fam Code Ann § 6.201 (3), (4); Utah Code Ann § 76-7-102 (1) (b) (i); Va Code Ann § 20-38.1 (a) (3); Wash Rev Code § 26.04.020 (1) (b); W Va Code § 48-2-302 (a), (b); Wis Stat Ann § 765.03 (1).